UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID HSIEH,<br>Plaintiff,<br>v.<br>APACHE DEEPWATER, LLC, et al.,<br>Defendants. | CIVIL ACTION NO.<br>3:19-CV-00408-BAJ-JW |

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER SEVERING AND REMANDING PLAINTIFF'S JONES ACT CLAIM AGAINST SCHLUMBERGER TECHNOLOGY CORPORATION**

**NOW INTO COURT,** through undersigned counsel, comes Defendant Schlumberger Technology Corporation ("Schlumberger"), who respectfully submits this Memorandum In Support of its Motion to Reconsider to this Court's Limited Order of Remand severing and remanding Plaintiff's Jones Act claim against Schlumberger, as follows:

## I. BACKGROUND

Plaintiff instituted the present matter in Louisiana state court, asserting claims arising out of his alleged exposure to asbestos while working as a logging engineer for Schlumberger between 1979 and 1987.[1] In his Petition, Plaintiff alleges negligence, strict liability, and general maritime law claims against Defendants Schlumberger, Apache Deepwater, LLC ("Apache Deepwater"), and other oil-and-gas companies, as well as a Jones Act claim against Schlumberger only.[2] Apache Deepwater subsequently removed this case from state court (R. Doc. 1), invoking this Court's

[1] *See* Original Petition ¶¶ 6-7, *Hsieh v. Apache Deepwater LLC, et al.*, No. 670,885, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana (June 26, 2018) (attached to Schlumberger Technology Corporation's Memorandum In Opposition to Plaintiff's Motion to Remand, as "Exhibit 1") (R. Doc. 32-1).

[2] R. Doc. 32-1, ¶¶ 7, 25.

jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA").[3] In response, Plaintiff filed a Motion to Remand the case back to state court, arguing, in part, that remand was necessary because this Court lacks subject matter jurisdiction over the case and because Plaintiff's Jones Act claim precludes removal. (R. Doc. 24).

Both Apache Deepwater and Schlumberger filed Oppositions to Plaintiff's Motion to Remand. (R. Docs. 39, 32). Apache Deepwater's Opposition addressed, among other things, Plaintiff's remand arguments concerning this Court's subject matter jurisdiction. (R. Doc. 39). Specifically, Apache Deepwater argued that removal was proper because this Court has subject matter jurisdiction over the case under the OCSLA. (R. Doc. 39). Schlumberger's Opposition addressed only Plaintiff's Jones Act claim. (R. Doc. 32). Specifically, Schlumberger argued that Plaintiff's Jones Act claim did not prevent removal because the claim was fraudulently pleaded by Plaintiff to prevent removal. (R. Doc. 32). As explained in its Opposition, Schlumberger had no basis for raising the fraudulent nature of Plaintiff's Jones Act claim prior to Plaintiff raising it in his Motion to Remand.

On August 23, 2019, this Court issued its Ruling and Order on the matter. (R. Doc. 40). As to the question of jurisdiction, the Court held that it has subject matter jurisdiction over the matter under the OCSLA. (R. Doc. 40). As a result, the Court denied Plaintiff's Motion to Remand. (R. Doc. 40). The Court nevertheless held that Plaintiff's Jones Act claim against Schlumberger was nonremovable and, as a result, ordered the claim to be severed and remanded back to state court pursuant to 28 U.S.C. § 1441(c)(2). (R. Doc. 40). Specifically, the Court's reasoning was as follows:

> Apache Deepwater may remove "the entire action" pending in the 19th Judicial District Court because the action would be removable under OCSLA without the inclusion of the statutorily nonremovable Jones Act claim. 28 U.S.C. § 1441(c)(l).

[3] 43 U.S.C. § 1349(b).

> The Court "shall" sever and remand Hsieh's statutorily nonremovable Jones Act claim. 28 U.S.C. § 1441(c)(2).

(R. Doc. 40).

In a footnote, the Court offered the following additional reasoning for its decision:

> Because the Court severs and remands the Jones Act claim, it declines to address Schlumberger's contention that the claim was fraudulently pleaded. *See, e.g., Landerman v. Tarpon Operating and Dev., L.L.C.,* 19 F. Supp. 3d 678, 684-85 (E.D. La. 2014) (declining to address fraudulent-pleading contention under similar circumstances and emphasizing the "mandatory language" of 28 U.S.C. § 144l(c)(2)).

(R. Doc. 40, n. 6).

The Court subsequently issued a Limited Order of Remand, severing Plaintiff's Jones Act claim against Schlumberger and remanding it back to state court. (R. Doc. 41).

With all due respect to this Honorable Court, and for the reasons set forth more fully below, Schlumberger asks this Court to reconsider and ultimately vacate its Limited Order of Remand, and deny Plaintiff's Motion to Remand as to all claims, including Plaintiff's Jones Act Claim against Schlumberger.

## II. RECONSIDERATION OF THE LIMITED ORDER OF REMAND IS APPROPRIATE TO CORRECT A MANIFEST ERROR OF LAW

The Federal Rules of Civil Procedure provide for motions to reconsider to correct manifest errors of law or fact.[4] A motion to reconsider a judgment is treated as a motion to alter or amend that judgment under Rule 59(e) if filed within twenty-eight (28) days of the date the order was entered.[5] Schlumberger's instant Motion is timely under this Rule. Under Rule 59(e), a judgment should be amended if the movant can demonstrate "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear and manifest error of

[4] Fed. R. Civ. P. 59(e).
[5] *Id.*; *see also Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F.Supp.2d 471 (M.D. La. 2002).

fact or law."[6] Here, Schlumberger respectfully asks this Court to reconsider its Limited Order of Remand to correct a manifest error of law and fact.

As explained above, this Court ordered Plaintiff's Jones Act claim to be severed and remanded pursuant to 28 U.S.C. § 1441(c)(2), without considering Schlumberger's argument that removal was proper because Plaintiff's Jones Act was fraudulently pleaded. (R. Doc. 40). The Court decided that it did not have the discretion to determine whether Plaintiff's Jones Act claim was fraudulently pleaded because, according to the Court, 28 U.S.C. § 1441(c)(2) mandates severance and remand of a Jones Act claim regardless of whether it has been fraudulently pleaded. (R. Doc. 40). With respect, Schlumberger submits that such a reading of 28 U.S.C. § 1441(c)(2) is manifestly erroneous.

28 U.S.C. § 1441 (c)(2) requires severance and remand of statutorily nonremovable claims. Plaintiff's Jones Act claim is not statutorily nonremovable, however, because it was fraudulently pleaded. A fraudulently pleaded Jones Act claim does not bar removal of the claim to federal court.[7] Although Jones Act cases generally are not removable, "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal."[8] To determine removal jurisdiction, the court may use a summary judgment-like procedure to dispose of the assertion that the Jones Act claim was fraudulently pleaded.[9] The court may deny remand where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits.[10]

---

[6] *Dressner v. Ingolia*, 2007 U.S. Dist. LEXIS 83118 at *9 (E.D. La. Nov. 8, 2007) (quotation omitted).
[7] *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345-46 (5th Cir. 1999) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995)).
[8] *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993).
[9] *See Burchett*, 48 F.3d at 176.
[10] *Hufnagel*, 182 F.3d at 345-46.

Given the above, if a court finds that a Jones Act claim has been fraudulently pleaded, the non-removal provisions of such a claim would not apply,[11] and, as a result, severance and remand would not be mandated under 28 U.S.C. § 1441(c)(2) because the fraudulently pleaded claim would not be considered nonremovable. This type of situation was recently considered in the case of *Gardner v. Fieldwood Energy, LLC*.

In *Gardner*, defendant (Fieldwood) argued that plaintiff's (Gardner) Jones Act claim did not preclude removal because it was fraudulently pleaded as plaintiff was not a Jones Act seaman.[12] The court then proceeded through the analysis of whether plaintiff was a Jones Act seaman and ultimately determined that he was not.[13] Thereafter, the court held:

> Having determined that Gardner was not a seaman, Gardner's Motion to Remand is easily resolved. While it is true that Jones Act claims are not removable under 28 U.S.C. § 1445(a), *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993), and general maritime claims are generally not removable under the "savings to suitors" provision in § 1333(a), *see Pelagidis v. Future Care, Inc.*, Civil Action No. H-17-3798, 2018 WL 2221838 *5-8 (S.D. Tex. May 15, 2018) (discussing the removability of general maritime claims following the amendment of 28 U.S.C. § 1141), **the fact that Gardner is not, and cannot be considered, a seaman, render those non-removability provisions inapplicable.** In addition, given the independent basis for federal jurisdiction alleged and proven by Fieldwood in connection with its Notice of Removal, remand is unavailable.
>
> Fieldwood removed this case from state court, asserting that Gardner had fraudulently alleged he was a seaman to avoid removal, and that the Court had federal question jurisdiction based on OCSLA. Although Gardner did not assert a claim based on OCSLA, or allege any facts in his state court petition that would have implicated the OCSLA, "the well-pleaded complaint rule does not apply to removal under OCSLA" *Pilette v, United Marine Offshore, LLC,* Civil Action No. 6:17-cv-01672,2018 WL 2212968 (W.D. La. Apr. 26, 2018), *report and recommendation adopted,* 2018 WL 2212921 (W.D. La. May 14, 2018), and a

[11] *Gardner v. Fieldwood Energy LLC*, CV H-18-0841, 2019 WL 885638, at *1 (S.D. Tex. Jan. 30, 2019), report and recommendation adopted, 4:18-CV-841, 2019 WL 859707 (S.D. Tex. Feb. 21, 2019) (**"In contrast, if Gardner is not, or could not be considered, a seaman, he will not have stated plausible claims under the Jones Act or general maritime law, and the non-removal provisions of 28 U.S.C. §§ 1333(a), 1445(a) would not apply."**) (emphasis added).
[12] *Id.*
[13] *Id.* at *5.

"plaintiff does not need to expressly invoke OCSLA in order for it to apply." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).[14]

Here, as in *Gardner*, this Court first should determine whether Plaintiff's Jones Act claim has been fraudulently pleaded before deciding whether severance and remand is required under 28 U.S.C. § 1441(c)(2). In a recent case involving Schlumberger, the Fifth Circuit upheld the Western District's analysis of whether a plaintiff's claim was fraudulently pleaded for the purposes of deciding whether to remand.[15]

In *Skinner v. Schlumberger*, similar to the instant case, plaintiff sued Schlumberger in state court, alleging general maritime negligence and violations of the Jones Act.[16] Schlumberger subsequently removed the case to federal court based, in part, on jurisdiction under the OCSLA.[17] Schlumberger also asserted that removal was appropriate despite plaintiff's Jones Act claim because said claim was fraudulently pleaded as plaintiff was not a Jones Act seaman.[18] On plaintiff's motion to remand, the Western District analyzed whether plaintiff was a Jones Act seaman and ultimately found that he was not.[19] As a result, the Western District held that plaintiff's Jones Act claim was fraudulently pleaded and denied plaintiff's motion to remand.[20] On appeal, the Fifth Circuit held that the Western District "did not err in denying [plaintiff's] motion to remand."[21]

Here, as in *Skinner*, severance and remand of Plaintiff's Jones Act claim is not mandated if the Court determines that said claim has been fraudulently pleaded. To make this determination of whether severance and remand is mandated, the Court must first decide whether Plaintiff's Jones

[14] *Id.* (emphasis added).
[15] *Skinner v. Schlumberger Technology Corporation*, 655 Fed. Appx. 188 (5th Cir. 2016).
[16] *Id.* at 190.
[17] *Id.*
[18] *Id.* at 191.
[19] *Id.* at 192.
[20] *Id.*
[21] *Id.*

Act claim has been fraudulently pleaded. This Court did not make such a determination and instead ordered Plaintiff's Jones Act claim to be severed and remanded without regard to the fraudulent nature of the claim. Respectfully, such an order is manifestly erroneous. This Court's Limited Order of Remand should therefore be reconsidered in order to correct this clear error of law and determine whether Plaintiff's Jones Act claim has been fraudulently pleaded.

## III. <u>REMOVAL IS APPROPRIATE FOR ALL CLAIMS BECAUSE PLAINTIFF'S JONES ACT CLAIM HAS BEEN FRAUDULENTLY PLEADED</u>

On reconsideration, this Court should find that Plaintiff's Jones Act claim has been fraudulently pleaded because Mr. Hsieh is not, nor can he establish that he is, a seaman under the Jones Act.

### A. <u>Mr. Hsieh's Employment with Schlumberger</u>

Plaintiff alleges he suffered exposure to asbestos while working as a wireline logger/logging engineer for Schlumberger between 1979 and 1987.[22] Schlumberger is an oilfield services company that provides wireline services to oil companies in the Gulf of Mexico and also worldwide.[23] As a logging engineer for Schlumberger, Plaintiff alleges that he "worked aboard jack up rigs and submersible barges," and "assisted in obtaining soil samples from the hole and then analyzed those samples for the presence of hydrocarbons."[24] In his Answers to the Master Set Discovery propounded by all Defendants, Plaintiff further described the work he did and the positions he held with Schlumberger.[25] From January through August 1980, Plaintiff was a Junior

[22] R. Doc. 32-1, ¶¶ 6-7.

[23] *See* Affidavit of Fred Kellermann ¶ 3 (August 5, 2019) (attached to Schlumberger Technology Corporation's Memorandum In Opposition to Plaintiff's Motion to Remand, as "Exhibit 2") (R. Doc. 32-2); *see also Ardleigh v. Schlumberger Ltd.*,832 F.2d 933, 933 (5th Cir. 1987) (explaining that "Schlumberger, Ltd., the Appellee, provided wireline services to oil companies in the Gulf of Mexico").

[24] R. Doc. 32-1, ¶¶ 7, 27-28.

[25] *See* Excerpts from Plaintiff's Answers to Defendants' Master Set of Interrogatories and Request for Production of Documents (Feb. 18, 2019) (attached to Schlumberger Technology Corporation's Memorandum In Opposition to Plaintiff's Motion to Remand, as "Exhibit 3") (R. Doc. 32-3).

Field Engineer whose "primary responsibility was undergoing Schlumberger's six month training program."[26] For the first three months, Plaintiff "spent eight hours a day during the week in a classroom site, learning the craft of log engineering."[27] For the last three months, Plaintiff "was assigned to a Schlumberger team, which consisted of an engineer (under which he trained) and two operators,"[28] with whom he "was required to complete ten jobs offshore . . . ."[29]

From August 1980 to 1982, Plaintiff was a Field Engineer, working with a team of two operators, and was "responsible for obtaining and logging samples from open holes to identify 'pay sands' (i.e. the location of hydrocarbons, specifically oil and gas)."[30] During this time, Plaintiff "also completed an additional 18 months of training and took his Senior Field Engineer test, which focused on his/Schlumberger's work for Gulf Oil."[31] Thereafter, from 1982 to 1984, Plaintiff was promoted to the position of Senior Field Engineer, but his "job duties with Schlumberger remained primarily the same as a FE [Field Engineer] . . . .[32]

In 1984, Plaintiff completed training as a Repeat Formation Tester Specialist ("RFT").[33] "Whereas before his responsibilities consisted primarily of obtaining and logging samples, Mr. Hsieh also became qualified to operate the RFT and analyze the additional data collected therefrom."[34] For approximately eight weeks in 1986 and again in 1987, Plaintiff worked "aboard the JOIDES Resolution as part of the Ocean Drilling Program, which obtained and studied sea floor samples."[35] Then, in 1988, Plaintiff obtained his GFE [General Field Engineer] status with

---

[26] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 2.
[27] R. Doc. 32-3, Ans. Interrog. No. 2, at pp. 2-3.
[28] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[29] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[30] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[31] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[32] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[33] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[34] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[35] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.

Schlumberger, which he trained for simultaneously with his work as an RFT Specialist."[36] As a General Field Engineer, Plaintiff's "responsibilities expanded to include more work in the second phase of drilling, wherein casing/piping was installed into the open hole."[37] Finally, for the last ten years of his employment with Schlumberger, from 1993 to 2003, Plaintiff continued work as a General Field Engineer, first in Taiwan branch and then in China branch of Schlumberger.[38]

While working for Schlumberger, Plaintiff worked on drilling rigs, ships, submersible barges, and platforms.[39] In his discovery responses, Plaintiff identified the following vessels he worked on while employed by Schlumberger: SEDCO 471, SEDCO 472, Booker 950, Penrod 63, Penrod 67, Mariner 3, Mariner 7, Discovery 534, Discovery Seven (7) Seas, Rowan Gorilla, and Diamond M.[40] Plaintiff admits that he "does not recall the precise dates he was aboard each of these vessels."[41] He does recall, however, that he "received his assignments from Schlumberger dispatchers[.]"[42] Plaintiff described the way his crew would receive assignments as "unpredictable" as he was unable "to predict precisely when a logging crew would be needed."[43]

### B. <u>Wireline loggers like Mr. Hsieh are not Jones Act seamen</u>

As explained above, a fraudulently pleaded Jones Act claim does not bar removal of the claim to federal court.[44] Although Jones Act cases generally are not removable, "defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal."[45] To determine removal jurisdiction, the court may use a summary judgment-like

[36] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[37] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[38] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 3.
[39] R. Doc. 32-3, Ans. Interrog. No. 2, at pp. 3-4.
[40] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
[41] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
[42] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
[43] R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
[44] *Hufnagel*, 182 F.3d at 345-46.
[45] *Lackey*, 990 F.2d at 207.

procedure to dispose of the assertion that the Jones Act claim was fraudulently pleaded.[46] The court may deny remand where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits.[47] In *Chandris, Inc.*,[48] the Supreme Court of the United States specified that where undisputed facts demonstrate that "a maritime worker has a clearly inadequate temporal connection to vessels in navigation" that the facts would only support the conclusion that such a worker is not a seaman, and the court may grant summary judgment or a directed verdict in that situation.[49]

To maintain a cause of action under the Jones Act, the plaintiff must be a seaman.[50] Whether a plaintiff is a seaman is a twofold test under *Chandris.* First, an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission" and second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."[51] While the threshold requirement is broad, the second requirement serves to differentiate "sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."[52]

Both federal and state courts alike have concluded that engineers like Plaintiff who performed substantially the same type of work as Plaintiff aboard various vessels not commonly controlled are not seaman under the Jones Act because they fail to satisfy the second *Chandris*

[46] *See Burchett*, 48 F.3d at 176.
[47] *Hufnagel*, 182 F.3d at 345-46.
[48] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 371 (1995).
[49] *Id.* at 371.
[50] *Hufnagel*, 182 F.3d at 345-46.
[51] *Chandris*, 515 U.S. at 368.
[52] *Id.*

requirement. Specifically, the Fifth Circuit has held repeatedly in cases involving Schlumberger wireline engineers doing the same type of work as Mr. Hsieh that such engineers are not seamen under the Jones Act. For example, in *Langston v. Schlumberger Offshore Services, Inc.*,[53] the Fifth Circuit held plaintiff was not a seaman where she performed thirty-two percent of her work on fifteen different vessels owned by ten unrelated owners, as she did not have a sufficient connection to a vessel or group of vessels.[54]

In *Langston*, the plaintiff "was employed by Schlumberger as a wireline operator and worked on a Schlumberger logging crew consisting of herself, another operator and an engineer."[55] The logging crew, as described by the Fifth Circuit, "gathers its data by lowering sensitive geophysical instruments into the well; these instruments make measurements that are transmitted to the surface and recorded or 'logged.'"[56] As it relates to how the plaintiff would receive her assignments, the Fifth Circuit summarized the process as follows:

> [Plaintiff's] crew was one of approximately twenty crews working for Schlumberger out of its Belle Chasse District. These crews worked in rotation so that the current job assignment was given to the crew that had been inactive the longest. As jobs were requested by customers the dispatcher assigned the crew eligible for the job. When a crew completed a job their names went to the bottom of the rotation list and they would then wait until their names worked their way to the top of the list for another job.[57]

Whether the plaintiff performed a job on land or on water, "ordinarily depend[ed] entirely upon her position on the rotation roster."[58] In total, the plaintiff performed approximately thirty-two percent (32%) of her work on fifteen different vessels owned by ten unrelated owners.[59]

---

[53] 809 F.2d 1192 (5th Cir. 1987).
[54] *Id.* at 1193.
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id*. at 1193-94.

On appeal to the Fifth Circuit, the "critical issue presented by this appeal is whether [plaintiff] performed a substantial portion of her work aboard a vessel or fleet of vessels."[60] Citing its prior decision in *Barrett v. Chevron, USA, Inc.*, the Fifth Circuit defined "fleet" as:

> By fleet we mean an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard. Unless fleet is given its ordinary meaning, the fundamental distinction between members of a crew and transitory maritime workers such as longshoremen is totally obliterated.[61]

Under the foregoing definition, the Fifth Circuit held that the vessels plaintiff worked on was not a fleet, and furthermore that "[s]he was assigned to work aboard fifteen different vessels owned by ten different owners; thus the summary judgment evidence does not suggest that these vessels were commonly controlled or had any other nexus that would support a finding that they were a fleet."[62] Finding that the plaintiff was not a seaman, the Fifth Circuit held that it was appropriate for the district court to have dismissed her Jones Act claim.[63]

In *Ardleigh v. Schlumberger Ltd.*, the Fifth Circuit considered facts similar to those in *Langston* to determine if plaintiff was a seaman under the Jones Act.[64] In *Ardleigh*, the plaintiff worked for Schlumberger as a wireline engineer, gathering and logging data from wells using "sensitive geophysical instruments."[65] As a wireline engineer, plaintiff was assigned jobs through a rotation system, like the one described in *Langston*.[66] He worked on thirty different vessels which were not under common control.[67] On appeal, the Fifth Circuit began its analysis by noting that "[i]t is now well established in this circuit that itinerant wireline workers are not Jones Act

---

[60] *Id*. at 1994 (citing *Barrett v. Chevron, USA, Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986) (en banc)).
[61] *Id*.
[62] *Id*.
[63] *Id*.
[64] 832 F.2d at 934.
[65] *Id*. at 933-34.
[66] *Id*. at 934.
[67] *Id*.

seamen. Although such workers may spend a significant amount of time on seagoing vessels, they usually have no permanent relationship with a particular vessel or fleet of vessels."[68] The Fifth Circuit then explained that plaintiff could only be classified as a seaman if the thirty different vessels on which he worked constituted a "fleet" as that term is defined in *Barrett*.[69] "As the court explained in *Langston,* however, the vessels on which a wireline engineer works are not so related."[70] Finding that vessels plaintiff worked on "did not 'act[ ] together or under one control,'" the Fifth Circuit ultimately held that plaintiff "cannot be classified as a seaman."[71]

Following the Fifth Circuit's decisions in *Langston* and *Ardleigh*, the Western District of Louisiana found in *Cunningham v. Schlumberger Well Services*[72] that plaintiff was not a seaman under the Jones Act where he performed production testing on wells, on a random assignment basis, "for many different customers on many different drilling vessels owned by many different customers."[73] Denying plaintiff's motion to remand his Jones Act claim back to state court, the Western District of Louisiana held:

> [Plaintiff] cannot possibly meet the seaman status criteria. He did not have a connection to a vessel in navigation (or an identifiable group of vessels) that was substantial in terms of both its duration and nature. Like the plaintiffs in *Langston* (18 jobs, 15 vessels, 10 owners) and *Ardleigh* (40 jobs, 30 vessels, lacking common ownership) and *Lirette v. N.L. Sperry Sun, Inc.*, 831 F.2d 554 (5th Cir. 1987) (4 years, 23 vessels lacking common ownership), the group of vessels that Cunningham worked aboard simply did not qualify as a fleet.[74]

In *Cunningham*, the Western District of Louisiana found removal of plaintiff's case was appropriate and denied plaintiff's motion to remand.[75]

---

[68] *Id*. (internal citations omitted).
[69] *Id*. (citing *Barrett*, 781 F.2d at 1074).
[70] *Id*. (citing *See Langston,* 809 F.2d at 1194).
[71] *Id*.
[72] 937 F. Supp. 570 (W.D. La. 1996).
[73] *Id*. at 570-73.
[74] *Id*. at 573.
[75] *Id*.

Here, Mr. Hsieh's case is on all fours with the facts in the cases cited above. Like the plaintiffs in those cases, Mr. Hsieh did not have an adequate connection to a vessel in navigation to satisfy the seaman inquiry; as a result, he has no reasonable possibility of establishing a Jones Act claim on the merits and denial of the remand motion is appropriate.[76]

Plaintiff's work as a logging engineer matches the type of work performed by plaintiffs in *Langston* and *Ardleigh*. He worked on at least eleven (11) different vessels[77] and like the plaintiffs in those cases received his assignments randomly from dispatchers.[78] Mr. Hsieh had no permanent relationship with a particular vessel or fleet of vessels, nor were the vessels he worked on under any type of common control. Fred Kellerman,[79] one of Mr. Hsieh's supervisors at Schlumberger,[80]described his job (and Mr. Hsieh's) of being a wireline engineer for Schlumberger precisely as described in the Fifth Circuit cases:

> During my time as an engineer for Schlumberger, my job (along with the other engineers) consisted of "logging the well," meaning that at each assigned well, I would drop instruments into it and then take precise measurements over specific areas of interest as instructed by the well owner(s) . . . .[81]

Mr. Kellermann performed his job on various vessels, receiving his job assignments through a rotation line-up system.[82] Not only did Mr. Kellermann perform the same type of work that Plaintiff did, Mr. Kellermann was also Plaintiff's supervisor at Schlumberger for a time.[83] As one of Plaintiff's supervisors, Mr. Kellermann "was personally aware of his job responsibilities and duties as an engineer, which were very similar to mine when I was a Schlumberger engineer."[84]

---

76 *Hufnagel*, 182 F.3d at 345-46.
77 R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
78 R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
79 R. Doc. 32-2, ¶ 11.
80 R. Doc. 32-3, Ans. Interrog. No. 2, at p. 4.
81 R. Doc. 32-2, ¶ 11.
82 R. Doc. 32-2, ¶¶ 11, 16-17.
83 R. Doc. 32-2, ¶ 9.
84 R. Doc. 32-2, ¶ 18.

According to Mr. Kellermann, Plaintiff "worked in the above-described line-up rotation, performing work on a job-by-job assignment basis."[85] Mr. Kellermann also has personal knowledge that a majority of the vessels that Plaintiff identified were not owned by Schlumberger or under the common ownership or control of any one company.[86]

The facts described above and the case law speaking directly to this issue demonstrate that Plaintiff did not have an adequate connection to a vessel in navigation to satisfy the seaman inquiry. Mr. Hsieh's work is on all fours with the work of the plaintiffs in a line of Fifth Circuit cases holding that wireline logging engineers like Mr. Hsieh are not Jones Act seamen. As a result, there is no reasonable possibility that Plaintiff can establish a Jones Act claim on the merits. Thus, just like the Western District did in *Cunningham*, this Court should similarly hold that Plaintiff's Jones Act claim has been fraudulently pleaded and deny Plaintiff's Motion to Remand as to all of Plaintiff's claims, including Plaintiff's Jones Act claim against Schlumberger.

**[SPACE INTENTIONALLY LEFT BLANK]**

[85] R. Doc. 32-2, ¶¶ 17-18.
[86] R. Doc. 32-2, ¶¶ 13-14.

## IV. CONCLUSION

For the foregoing reasons, Schlumberger's Motion to Reconsider should be granted, this Court's Limited Order of Remand should be vacated, and Plaintiff's Motion to Remand should be denied as to all claims, including Plaintiff's Jones Act claim against Schlumberger as it has been fraudulently pleaded.

Respectfully submitted,

**FORMAN WATKINS & KRUTZ LLP**

*/s/ Mary R. Arthur*
MARY R. ARTHUR, LA. BAR NO. 32644
PETER A. MOIR, LA. BAR NO. 34950
201 St. Charles Avenue, Suite 2100
New Orleans, Louisiana 70170
T: (504) 799-4383
F: (504) 799-4384
LAeservice@formanwatkins.com

*Attorneys for Schlumberger Technology Corp.*

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on this 29th day of August, 2019.

*/s/ Mary R. Arthur*
MARY R. ARTHUR