UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID HSIEH | CIVIL ACTION NO: 3:19-cv-00408-BAJ-UNA |
| versus | JUDGE JACKSON |
| APACHE DEEPWATER, LLC, et al | MAGISTRATE WILKINSON |

**DEFENDANTS' STATUS REPORT PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 26**

**A.  JURISDICTION**

With all properly served Defendants concurring, Apache Deepwater, LLC removed this civil action from the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  Defendants contend that federal question jurisdiction over the captioned matter exists pursuant to 28 U.S.C. §1331 because the claims asserted against Defendants arise under the laws of the United States by virtue of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1349, and pendent jurisdiction, 28 U.S.C. § 1367.

This Court denied Plaintiff's Motion to Remand with the sole exception of Plaintiff's Jones Act claim against his employer, Schlumberger Technologies, LLC, which was remanded to the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.  Plaintiff filed a Motion for Reconsideration of the Court's denial of its Motion to Remand regarding his other claims which Defendants have opposed.  Plaintiff's Motion for Reconsideration is pending before this Court.

{B1307091.1}

**B. BRIEF EXPLANATION OF THE CASE**

Plaintiff claims that he developed multiple cancers including malignant mesothelioma as a result of occupation exposure to asbestos while employed by Schlumberger Technologies, LLC on offshore oil rigs and platforms.

Defendants generally deny all liability to Plaintiff, deny that Plaintiff was occupationally exposed to asbestos as a result of their individual acts or omissions, and deny that Plaintiff's claimed injuries were caused by exposure to asbestos resulting from their individual acts or omissions. Individual Defendant's descriptions of the claims asserted against them are set forth below.

1) Apache Deepwater, LLC

   Apache generally denies all liability to Plaintiff and further denies that Plaintiff was exposed to asbestos on any Apache facility or as a result of any Apache activity. Alternatively, Apache contends that any asbestos exposure attributable to Apache was not a cause, proximate cause or legal cause of Plaintiff's injuries. Apache contends that Plaintiff's work on an Apache facility, if any, occurred on the Outer Continental Shelf. Apache further denies that Plaintiff's injuries are related to asbestos exposure.

2) Shell, SWEPI and Shell Offshore

   Shell, SWEPI, and Shell Offshore deny any and all liability to Plaintiff. Shell, SWEPI, and Shell Offshore are not aware of any information to support any of plaintiff's contention that he was exposed to asbestos or asbestos containing products while working upon any drill site owned or operated by Shell, SWEPI, or Shell Offshore. Shell, SWEPI, and Shell Offshore deny any liability for any vessel, fleet of vessels or drilling rig upon which any plaintiff alleges exposure. Shell, SWEPI, and Shell Offshore deny that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiff has suffered no damages, and any alleged injuries and/or damages are speculative.

3) Nustar

   NuStar denies any and all liability to Plaintiff. NuStar is not aware of any information to support Plaintiff's contention that he was exposed to asbestos or asbestos containing products while working upon any vessel, fleet of vessels or drilling rig owned or operated

by NuStar or any entity for which NuStar has successor liability. NuStar denies any liability for any vessel, fleet of vessels or drilling rig upon which any plaintiff alleges exposure. NuStar denies any successor liability for any vessel, fleet of vessels or drilling rigs formerly owned by Diamond M Drilling Company. NuStar denies that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiffs has suffered no damages, and any alleged injuries and/or damages are speculative.

4) Chevron Phillips Chemical Company, LP

Chevron Phillips Chemical Company LP ("CPChem") denies liability to Plaintiff.

CPChem is the successor in interest to Phillips Petroleum Company for alleged liabilities from the asbestos-containing drilling mud additives distributed by Phillips' Drilling Specialties Company division.

Drilling Specialties Company distributed Flosal, an asbestos drilling mud additive, while Plaintiff worked in the oilfield.

At drilling operations, the drilling crews handle and introduce drilling mud additives at the mud-mixing hopper.

Plaintiff never worked on a drilling crew. Instead, beginning June 1980, Plaintiff worked for Schlumberger as a wireline logger. Wireline loggers furnish oilfield operators and their drilling contractors downhole information necessary for the economic discovery and production of oil and gas. Wireline loggers gather that information through instruments lowered into the borehole on electric cables called wirelines. The wireline transmits information from the borehole to the wireline logging cabin. On offshore drilling and production facilities, the wireline logging cabin is situated on the top deck of drilling or production facility and away from the mud-mixing work on a lower deck. The information transmitted from the borehole to the wireline logging cabin is recorded on a graph called the log. Interpretation of these logs facilitates determinations concerning the location and measure or volume of oil and gas within the surrounding downhole formations.

Drilling Specialties Company stopped distribution of Flosal in July 1984.

CPChem disputes Plaintiff's alleged exposure to asbestos from Flosal was a substantial factor in his alleged mesothelioma. CPChem disputes exposure and, in consequence, medical causation because there is no potential for Plaintiff's exposure while he worked offshore for Schlumberger as a wireline logger.

5) Exxon Mobil Corporation and ExxonMobil Oil Corporation (collectively "ExxonMobil")

ExxonMobil denies any and all liability to Plaintiff. ExxonMobil is not aware of any information to support Plaintiff's contention that he was exposed to asbestos or asbestos

{B1307091.1}

containing products while working upon any vessel, fleet of vessels or drilling rig owned or operated by ExxonMobil or any entity for which ExxonMobil has successor liability. ExxonMobil denies any liability for any vessel, fleet of vessels or drilling rig upon which any plaintiff alleges exposure. ExxonMobil denies that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiffs has suffered no damages, and any alleged injuries and/or damages are speculative.

6) Murphy Exploration & Production Company-USA

Murphy EXPRO denies any and all liability to Plaintiff. Murphy EXPRO is not aware of any information to support any of plaintiff's contentions that he was exposed to asbestos or asbestos containing products while working upon any premise and/or drill site owned or operated by Murphy EXPRO or its predecessors. Murphy EXPRO denies any liability for any vessel, fleet of vessels or drilling rig upon which plaintiff alleges exposure. Murphy EXPRO denies that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiff has suffered no damages, and any alleged injuries and/or damages are speculative.

7) BHOO and Baker Hughes

BHOO and Baker Hughes deny any and all liability to plaintiff. BHOO and Baker Hughes are not aware of any information to support plaintiff's contention that he was exposed to asbestos, asbestos-containing drilling mud additives and/or asbestos-containing products related to the activities of either Baker Hughes Oilfield Operations, LLC or Baker Hughes, a GE company, LLC while working upon any drill site during his career.

8) Chevron U.S.A. Inc. ("Chevron") and Texaco Inc. ("Texaco"):

Chevron and Texaco deny any and all liability to Plaintiff. Chevron U.S.A. Inc. nor Texaco Inc. are aware of any information to support plaintiff's contention that he worked on any drilling site owned operated by Chevron U.S.A. Inc. and/or Texaco Inc. Chevron and Texaco are not aware of any information to support any plaintiff's contention that he was exposed to asbestos or asbestos containing products while working upon any drill site owned or operated by Chevron and/or Texaco. Chevron and Texaco deny any liability for any vessel, fleet of vessels or drilling rig upon which any plaintiff alleges exposure. Chevron and Texaco deny that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiff has suffered no damages, and any alleged injuries and/or damages are speculative.

9) Pintail Minerals Corporation

Pintail denies any and all liability to Plaintiff. Pintail is not aware of any information to support Plaintiff's contention that he was exposed to asbestos or asbestos containing products while working upon any vessel, fleet of vessels or drilling rig owned or operated

by Pintail or any entity for which Pintail has successor liability. Pintail denies any liability for any vessel, fleet of vessels or drilling rig upon which any plaintiff alleges exposure. Pintail did not participate in, own, or operate any well that was drilled by jack-up rigs or submersible barges. Pintail was not an operator on any wells drilled between 1979 and 1987 located onshore in Louisiana or offshore in any location. Pintail has supplied Plaintiff with an affidavit supporting its position and is working with Plaintiff to obtain a dismissal accordingly. Pintail is not aware of any evidence supporting Plaintiff's position that he suffers from an asbestos-related illness.

10) Diamond Offshore Company

Diamond Offshore Company denies any and all liability to Plaintiff. Diamond Offshore Company is not aware of any information to support Plaintiff's contention that he was exposed to asbestos or asbestos containing products while working upon any vessel, fleet of vessels or drilling rig owned or operated by Diamond Offshore Company or any entity for which Diamond Offshore Company allegedly has successor liability. Diamond Offshore Company denies any liability for any vessel, fleet of vessels or drilling rig upon which Plaintiff alleges exposure to asbestos. Diamond Offshore Company denies any successor liability for any vessel, fleet of vessels or drilling rigs formerly owned or operated by Diamond M Drilling Company or any other related entity. Diamond Offshore Company denies that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiffs has suffered no damages, and any alleged injuries and/or damages are speculative in nature.

11) BP America, BP Corporation, and BP Products

BP America, BP Corporation, and BP Products

BP America, BP Corporation, and BP Products deny any and all liability to Plaintiff. BP America, BP Corporation, and BP Products
are not aware of any information to support any plaintiff's contention that he was exposed to asbestos or asbestos containing products while working upon any drill site owned or operated by BP America, BP Corporation, or BP Products. BP America, BP Corporation, and BP Products deny any liability for any vessel, fleet of vessels or drilling rig upon which any plaintiff alleges exposure. BP America, BP Corporation, and BP Products deny that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiff has suffered no damages, and any alleged injuries and/or damages are speculative.

12) ConocoPhillips Company

ConocoPhillips denies any and all liability to Plaintiff. ConocoPhillips is not aware of any information to support any of Plaintiff's contentions that he was exposed to asbestos or asbestos containing products while working upon any drill site owned or operated by

{B1307091.1}

ConocoPhillips. ConocoPhillips denies any liability for any vessel, fleet of vessels or drilling rig upon which Plaintiff alleges exposure. ConocoPhillips denies that Plaintiff suffers from an asbestos-related illness. In the absence of any alleged asbestos-related disease, Plaintiff has suffered no damages, and any alleged injuries and/or damages are speculative.

13) Sunbelt Energy, Ltd.

Sunbelt Energy, Ltd. ("Sunbelt") generally denies all liability to Plaintiff and denies that Plaintiff was exposed to asbestos at any facility of which Sunbelt has or had any ownership interest or contacts. Sunbelt is a consulting and holding company, specializing in geophysics and geology. Sunbelt has never operated an oil and gas well, nor contracted labor or supplied equipment and materials for the operation of an oil and gas well. At all relevant times, Sunbelt's activities were limited to consulting and to non-operating ownership in mineral interests.

Plaintiff has not alleged facts sufficient to determine how he was exposed to asbestos-containing products during his wireline logging work, such as drilling mud mixtures that are not used near the cabin where wireline logging is performed. Plaintiff has also failed to allege any facts to indicate that Sunbelt had any factual connection to Plaintiff at any time.

14) Union Carbide & Montello

Plaintiff claims exposure to various products, equipment, and drilling mud additives during his employment as a wireline logger with Schlumberger beginning in 1980. Plaintiff's claims against Union Carbide and Montello relate to his alleged use of drilling mud additives. Union Carbide, for a period of time, sold its unique, short-fiber raw chrysotile asbestos to various finished-product manufacturers and distributors, including for use as a drilling mud additive. The trade name of Union Carbide's asbestos was "Calidria." Montello was the exclusive distributor for Union Carbide's drilling mud additives. Montello would sell mud additives to mud supply/service companies, who would in turn then sell them to oilfield operators or drilling contractors, primarily under the names "Visbestos" or "Super Visbestos."

Defendants deny any and all liability to Plaintiff. Discovery is still pending in this matter. To date, there is no evidence that David Hseih worked around any products marketed by Montello that contained Union Carbide asbestos. Additionally, there is no evidence establishing that his alleged exposure to Union Carbide asbestos (if any) significantly increased the risk of contracting his alleged asbestos-related disease such that it can be considered a substantial contributing factor or specific medical cause.

{B1307091.1}

15) ENSCO Offshore Company

ENSCO denies any and all liability to Plaintiff. Plaintiff has asserted claims against ENSCO under the Jones Act and the Doctrine of Unseaworthiness. The Jones Act claims have been dismissed. Plaintiff alleges that through his work with Schlumberger, an oil field services provider, that he was somehow exposed to asbestos and that ENSCO is liable for same; Plaintiff claims mere exposure to drilling mud caused his multiple diverse cancers. Plaintiff has failed to provide any specific facts to support his assertions or from which Defendants can meaningfully begin discovery.

Despite repeated requests, Plaintiff has failed to state:

(1) when he was on an ENSCO facility;

(2) where the facilities were located;

(3) the length of time he spent at or on the facilities;

(4) the reason(s) for his presence at or on the facilities;

(5) if worked, what types of work did he perform on said facilities, including the locations for same;

(6) the areas of facilities visited and reasons for same; and

(7) the types of "drill mud" involved, specific additives, manufacturers of same and related issues.

Without these localized facts from Plaintiff, ENSCO cannot meaningfully progress with discovery and because of Plaintiff's omissions, ENSCO cannot accurately report on the status of this case.

Accordingly, ENSCO denies all allegations of plaintiff.

**C. PENDING MOTIONS**

Plaintiff's Motion for Reconsideration [Doc. 47] of Order Denying Remand [Doc. 40].

ENSCO's Motion for Summary Judgment on the issue of unseaworthiness. ENSCO will file a Motion to Produce Plaintiff for a Discovery Deposition.

**D. DEFENDANTS' LISTS OF PRINCIPAL ISSUES**

No significant discovery has been completed in this case and Plaintiff has not yet been deposed. At this point, Defendants possess little information regarding Plaintiff's alleged exposure to asbestos and injuries.

1) General List of Principal Issues

    a. Whether Plaintiff sustained occupational exposure to asbestos?

    b. The nature of Plaintiff's injuries?

    c. Whether Plaintiff's occupational exposure to asbestos was the factual, legal and/or proximate cause of any of Plaintiff's claimed injuries?

    d. Whether Plaintiff was exposed to asbestos due to the acts, omissions, negligence or fault of each individual Defendant?

    e. Whether the doctrine of unreasonably dangerous per se is retroactive to the periods of exposure in question in this case?

    f. Whether asbestos-containing products are unreasonably dangerous per se as a matter of law?

    g. Whether Plaintiff's exposure to asbestos by each individual Defendant was the factual, legal and/or proximate cause of any of Plaintiff's injuries?

    h. The existence of potential alternative causes for any and all of Plaintiff's alleged injuries.

    i. The nature and location of Plaintiff's exposure sites?

    j. The awareness of the owners and operators of the offshore drilling and production facilities where Plaintiff worked concerning the potential hazards of asbestos?

    k. Whether any individual Defendant of third party owed any legal duty to Plaintiff?

    l. The allocation of fault among all Defendants and third parties?

    m. Whether Plaintiff's own conduct constituted fault, contributory negligence, or assumption of the risk under the applicable law?

    n. Whether Plaintiff's negligence will completely bar recovery?

    o. Plaintiff's status as a Jones Act Seaman?

    p. Whether and which vessels on which Plaintiff worked, if any, were unseaworthy?

    q. Whether and which vessels on which Plaintiff worked, if any, were in navigation?

    r. Whether and which vessels on which Plaintiff worked, if any, were subject to common ownership or part of a fleet?

    s. Whether Plaintiff's alleged exposure to asbestos, if any, on any drilling site was due to any defects in things over which a Defendant had *garde* or custody?

    t. Whether Plaintiff was permanently attached to any of the identified vessels?

    u. The nature, extent and amounts of Plaintiff's recoverable damages?

    v. Whether any of Plaintiff's claims are barred by liberative prescription, peremption or laches?

    w. Whether the manufacturers of asbestos-containing products were sophisticated purchasers of asbestos?

    x. Whether a manufacturer of a component part that is used in a finished product manufactured by another company has a duty to warn the end user of the finished product?

    y. Whether any alleged failure to warn or inadequate warning by Defendants was a substantial contributing factor in Plaintiff's alleged injuries?

    z. Any and all factual and legal issues inherent in or related to that descriptions of the case set forth herein.

2) Union Carbide & Montello Specific Issues

    a. Whether the Plaintiff was exposed to Calidria, and whether such exposure was a substantial factor in causing the Plaintiff's alleged mesothelioma?

**E. DAMAGES**

Insufficient discovery has been completed for Defendants to make any reasonable assessment regarding Plaintiff's exposure to asbestos, any Defendant's potential liability,

{B1307091.1}

the nature of Plaintiff's asbestos-related injuries, if any, and the nature and extent of Plaintiff's recoverable damages, if any. Currently, all Defendants deny liability to Plaintiff and deny all claims of damages sustained by Plaintiff. Further, all Defendants contend that any damages claimed by Plaintiff must be barred and/or reduced by a) the fault of the Plaintiff, and any other party or settling person or entity, b) the comparative fault of any other person or entity, and c) any benefits received by Plaintiff, including but not limited to workers' compensation, Medicare, Medicaid, write-offs, miscellaneous gratuities, and insurance benefits.

**F. SERVICE**

Defendants are unaware of any outstanding issues with regard to service of process.

**G. DISCOVERY**

1) Have Initial Disclosures required under FRCP 26(a)(1) been completed?

   [ ] YES         [ X ] NO

2) Do the Parties object to Initial Disclosures?

   [ ] YES         [ X ] NO

   The Parties participated in an FRCP 26 telephone conference on February 13, 2020 and agreed to exchange Initial Disclosures on March 16, 2020.

3) Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (See discussion at Section H, below) (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

   This issue was discussed during the February 13, 2020 FRCP 26 telephone conference. Defendants agreed to submit to Plaintiff a proposed Joint Motion for

{B1307091.1}

      Protective Order which will be used to protect any confidential or proprietary materials sought in discovery.

4) Discovery from experts. Identify the subject matter(s) as to which expert testimony will be offered:

      Due to the lack of discovery, Defendants are unable to determine the identities of experts they may retain, and the nature or subject matters of their testimony that may be offered at trial. At the present time, Defendants believe that they may offer experts to testify as to the following subject matters: (a) Industrial Hygiene, (b) State of the Art, (c) Economic, (d) Pulmonology, including medical causation; (e) Oncology, including medical causation; (f) Occupational Medicine, including medical causation, (g) Epidemiology, including medical causation, (h) Pathology, including medical causation, and (i) Oil Exploration/Drilling.

**H. PROPOSED SCHEDULING ORDER**

      In order to facilitate the orderly, efficient and expeditious disposition of this matter, it is hereby ordered that this claim Defendants suggest that this case be governed by the following scheduling order:

1) All written discovery shall be propounded by June 30, 2020.

2) On or before March 31, 2020, Plaintiff shall produce to Defendants all pathology in Plaintiff's counsel's possession, namely:

      Stanford Healthcare, Accession No. 19-01137.

      Taiwan, Accession Nos. S107-03671 Block C-G; S106-41373, Block A; S107-00978.

      Taipei Veterans General, Path# S106-41373. Adenocarcinoma diagnosis report dated 10/23/17, Path# S107-00978. Adenocarcinoma diagnosis report dated 1/10/18 and Path# S107-03671. Epithelioid mesothelioma and adenocarcinoma report dated 1/30/18.

      Stanford Health Care, SHS-18-10688, Slides S107-03670 D (6 slides) & S107-03671 D (6 slides) and SHS-18-10688.

      And, Plaintiff will obtain and provide to Defendants any additional pathology related to Plaintiff's diagnoses of mesothelioma, adenocarcinoma/lung cancer, renal cancer and bladder cancer.

3) Fact discovery shall be completed on or before November 30, 2020.

4) Plaintiff's expert reports shall be served by November 30, 2020. The deadline to depose Plaintiff's experts is December 30, 2020.

5) Defendants' expert reports shall be served by January 15, 2021. The deadline to depose Defendants' experts is February 15, 2021.

6) Dispositive Motions and Daubert challenges shall proceed on the following schedule:

   a. All dispositive motions and defenses shall be filed on or before March 30, 2021.

   b. Oppositions thereto shall be filed on or before April 30, 2021.

   c. Replies to Oppositions shall be filed on or before May 15, 2021.

   d. The parties shall file Motions in Limine and Daubert motions 60 days prior to trial.

   e. The parties shall exchange Rule 26(a)(3)(A) Pretrial Disclosures by May 15, 2021.

**I. TRIAL**

1) Has a demand for trial by jury been made?

   [ X ] YES     [   ] NO

2) Estimate the number of days that trial will require.

   Ten (10) days.

**J. OTHER MATTERS**

1) Are there any specific problems the Parties wish to address at the Scheduling Conference?

   [   ] YES     [ X ] NO

   If the answer is "YES," please explain:

   - Plaintiff was allegedly initially diagnosed with some or all of his claimed injuries at overseas medical facilities in foreign nations including but not limited to the Peoples' Republic of China. Based on Defendants' inquiries, production of medical records and tissue specimens from these facilities may not be possible without Plaintiff's cooperation which to this point has not been forthcoming.

{B1307091.1}

- Defendants contend that Plaintiff's genetic profile may be the cause of his multiple claimed cancers. Defendants have requested a non-invasive tissue sample for genetic testing which Plaintiff has rejected.

- Defendants have made repeated requests for the discovery deposition of Plaintiff.

2) If the answer is no, do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report?

    [ ] YES    [ X ] NO

### K. ALTERNATIVE DISPUTE RESOLUTION ("ADR")

1) Several ADR techniques are available through the court and may be helpful in your case. These include early neutral evaluation, mediation, and summary jury trial. Do the parties wish to engage in alternative dispute resolution proceedings?

    [ ] YES    [ X ] NO

    Not at the present time.

2) If the parties have been unable to agree on an ADR procedure, but one or more parties believes that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

    Not applicable.

### L. SETTLEMENT

1) Please set forth what efforts, if any, the parties have made to settle this case.

    Defendants have received no settlement demands.

2) Do the parties wish to have a settlement conference:

    [ X ] YES    [ ] NO

    Is your answer is yes, at what stage of litigation would a settlement conference be most beneficial?

    A settlement conference may be beneficial following the completion of all fact and expert discovery.

**M. CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.  Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

    [  ] YES      [ X ] NO

By Attorneys for Apache Deepwater, LLC:

*s/ William L. Schuette*
William L. Schuette (TA, #02098)
Michele Whitesell Crosby (#20152)
JONES WALKER LLP
8555 United Plaza Blvd., 5th Floor
Baton Rouge, Louisiana   70809
Telephone:  (225) 248-2000
Fax:  (225) 248-3056
wschuette@joneswalker.com
mcrosby@joneswalker.com

and

Douglas C. Longman, Jr. (#8719)
Carmen M. Rodriguez (#22573)
JONESWALKER LLP
600 Jefferson Street, Ste. 1600
P. O. Box 3408
Lafayette, LA  70502-3408
Telephone:  337/593-7600
Facsimile:  337/593-7601
dlongman@joneswalker.com
crodriguez@joneswalker.com

{B1307091.1}

{B1307091.1}

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I served the foregoing *Defendant's Status Report Pursuant to Federal Rule of Civil Procedure 26* electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

                                              *s/ William L. Schuette*
                                              William L. Schuette