UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAVID HSIEH                                                          CIVIL ACTION

VERSUS                                                               NO. 19-00408-BAJ-DPC

APACHE DEEPWATER, LLC, ET AL.

### ORDER AND REASONS

Plaintiff David Hsieh's Motions to Compel Discovery filed against BP America, Inc., BP Corporation North America, Inc. and BP Products North America Inc. (collectively "BP") (ECF No. 170), Chevron U.S.A. Inc. f/k/a Gulf Oil Corporation ("Chevron") (ECF No. 171), ExxonMobil Oil Corporation and Exxon Mobil Corporations (together, "Exxon") (ECF No. 172), and Texaco, Inc. ("Texaco") (ECF No. 174) are pending before me in this matter. . Defendants filed timely Opposition Memoranda. ECF Nos. 189, 192, 194 & 195.

Considering the record, the submissions and arguments of counsel, and the applicable law, IT IS ORDERED that Plaintiff David Hsieh's motions to compel are DENIED for the reasons stated herein.

### I.   BACKGROUND

Plaintiff filed suit to recover damages for his development of malignant mesothelioma and adenocarcinoma as a result of asbestos exposure from 1980-1987, for which he contends Defendants are liable under theories of negligence and strict liability.[1] Specifically, Plaintiff contends Defendants mined, manufactured, distributed, specified and/or utilized asbestos containing drilling mud additives aboard vessels upon which he worked, and his work conditions exposed him to asbestos drilling mud additives through two routes: (1) direct inhalation of dry additives, which were dumped into hoppers set up near his work unit and (2) direct exposure to

---

[1] ECF No. 1-2, at 11–13; 16–20.  Defendants remove the case to this Court.  *See* ECF No. 1.

1

asbestos containing drilling mud while working on the drill floor, preparing, maneuvering, and withdrawing his equipment from the drill hole.[2]  Defendants deny the allegations.[3]

Plaintiff propounded discovery on October 13, 2020.[4]  Due to an automatic stay triggered by another defendant's bankruptcy, discovery responses were suspended.  ECF Nos. 115, 118.  The Court lifted the stay as to all parties, except ENSOC, on February 2, 2021.  ECF No. 136.

### A. Discovery Directed to BP

BP delivered its discovery responses on March 18, 2021.[5]  Plaintiff argues that BP's responses include general, boilerplate objections and factual misrepresentations in its initial statement, and that BP's investigation focused only on one vessel (SEDCO 471) rather than all of the areas requested in Plaintiff's discovery.[6]  Plaintiff also argues that BP improperly incorporated by reference its preliminary statement and general objections in each response and thus fails to properly respond.[7]  Plaintiff contends that each substantive response entailed one sentence: "See Preliminary Statement and General Objections which are incorporated herein by reference."[8]  Plaintiff seeks an order compelling substantive responses to Interrogatory Nos. 1–8 and Requests for Production Nos. 1–31.[9]

In opposition, BP argues that Plaintiff's discovery seeks information that is not relevant to any claim or defense and is not proportional to the needs of the case.[10]  BP argues that Plaintiff was unable to identify any vessel, location, time period, job or other identifying information for any job attributable to a BP entity, with only the mention of a possibility of a job connected to the

---

[2] ECF No. 111, at 4.
[3] ECF Nos. 10, 116 & 117.
[4] ECF Nos. 170, at 16; 171 at 25; 172 at 27; 174 at 29.
[5] ECF No. 170, at 7.
[6] *Id.* at 7–8.
[7] *Id.* at 11–15.
[8] *Id.* at 12; *see also id.* at 27–87, 355–374.
[9] *Id.* at 12–15.
[10] ECF No. 194, at 1.

2

rig SEDCO 471 and later identified several blocks of interest.[11] BP argues that Plaintiff could not recall any BP job except possibly the SEDCO 471 rig in 1983–84, and Plaintiff testified that he did no more than three jobs for BP while working for Schlumberger.[12]

### B. Discovery Directed to Exxon

Exxon delivered its responses on March 3 and May 14, 2021.[13] Plaintiff argues that Exxon has obstructed discovery by use of "preliminary statements" and "boilerplate objections."[14] He also contends the responses are insufficient and he seeks well records from 1980 through 1987 for well sites within the Gulf of Mexico and information regarding the rigs and mud programs used by Exxon in the Gulf of Mexico to establish his exposure to asbestos drilling mud additives.[15] Plaintiff seeks an order compelling substantive responses to Interrogatory Nos. 2, 7 & 8 and Requests for Production Nos. 2-9, 13, 14, 16, 18, 19, 22, 26-30.[16]

Exxon raises procedural objections and substantive objections in opposition. Procedurally, Exxon argues that Plaintiff has failed to comply with Local Rule 37 insofar as the motion fails to set forth the particular discovery requests at issue followed by the responses which Plaintiff alleges are inadequate.[17] Exxon also argues that its objections are not boilerplate but rather are well-supported, specific objections and Plaintiff's requests are not proportional to the needs of this case.[18] Indeed, it argues that Plaintiff's inability to identify any rig, vessel or other structure that Exxon owned or operated where he worked renders his discovery requests not relevant and not proportional to the needs of the case insofar as he seeks information for every well drilled or

---

[11] *Id.* at 1–4.
[12] *Id.* at 6.
[13] ECF No. 172, at 8–9.
[14] *Id.* at 5 & 12–16.
[15] *Id.* at 5–7, 15.
[16] *Id.* at 15.
[17] ECF No. 195, at 5.
[18] *Id.* at 6.

spudded by Exxon across more than half a million square miles from 1980 through 1987.[19] Further, Exxon argues, Plaintiff's requests are particularly improper given that Exxon produced its policies during the 1980s showing that it prohibited the use of asbestos drilling mud additives.[20] Thus, Exxon contends, Plaintiff's requests would impose excessive cost and expense to locate documents that, even if located, would provide no probative information relevant to his claim.[21] In other words, given Plaintiff's inability to identify any rigs where he worked, even if well records were located that demonstrated that drilling mud additives containing asbestos were used contrary to Exxon policies, Plaintiff still cannot establish that he worked on the particular rig at issue.[22]

### C. Discovery Directed to Chevron and Texaco

Plaintiff's discovery to Chevron and Texaco is substantially similar, though Plaintiff later identified for Chevron a list of drilling areas (i.e., those identified during Plaintiff's deposition and nine other areas) and identified a Gulf Oil employee (Dick Cowell) as the person who requested Plaintiff's services on its rigs and/or well sites.[23] As in the other motions, Plaintiff objects to the use of "general and boilerplate objections"[24] and argues that the requests are proportional given Plaintiff's $1,231,855 in medical expenses incurred to date.[25] Plaintiff seeks an order compelling substantive responses from Chevron to Interrogatory Nos. 2, 7, 8 and Requests for Production Nos. 2–9, 13, 14, 16, 18, 19, 22, 26–30[26] and from Texaco to Interrogatory Nos. 2, 7, 8 and Requests for Production Nos. 2-9, 13, 14, 16, 18. 19, 22, and 26–30.[27]

---

[19] ECF No. 195, at 1–2, 3–4.
[20] *Id.* at 5.
[21] *Id.* at 8
[22] *Id.* at 12.
[23] ECF No. 171, at 7–8, 13.
[24] *Id.* at 5
[25] *Id.* at 7; *see also* ECF No. 174, at 7, 12–18.
[26] ECF No. 171, at 13.
[27] ECF No. 174, at 15–16.

4

Initially, Defendants note that, in Supplemental Responses, they withdrew their objections thus mooting Plaintiff's general, boilerplate basis for his motion to compel.[28] Defendants further argue that Plaintiff is on a fishing expedition, and that the only proper issue raised by the motion is discovery directed to the well logs because Plaintiff failed to file a timely motion to compel with regard to any other issue.[29] Like Exxon, Chevron and Texaco also argue that Plaintiff's motion to compel is procedurally improper for failure to comply with Local Rule 37's requirement to include the verbatim summary of each discovery request at issue followed by the substantive responses.[30]

Both Chevron and Texaco cite to witness testimony confirming that they did not use asbestos drilling mud additives off the coast of Louisiana or on the Outer Continental Shelf during the relevant time period and note that neither Plaintiff nor any co-worker provided testimony or other evidence to suggest that Plaintiff was exposed to asbestos drilling mud.[31] Further, Chevron and Texaco argue that Plaintiff's suggestion that they failed to identify another potential source of his medical condition is disingenuous and ignores entirely his germline genetic mutations associated with cancer.[32] Defendants argue that they have exercised due diligence and conducted searches well beyond the "reasonable inquiry" required to respond to the requests. Indeed, they outline the steps taken in their fruitless efforts to discover and identify relevant wells and rigs based on Plaintiff's testimony.[33] Texaco further argues that it discovered one of the two well sites where Plaintiff worked and provided the logging reports, which information fails to reflect any mention of asbestos additives.[34]

---

[28] ECF Nos. 189 at 21–24; 192 at 21–24.
[29] ECF Nos. 189, at 2, 4–5; 192 at 3–4.
[30] ECF Nos. 189 at 5–6; 192 at 5–6.
[31] ECF Nos. 189 at 6–7; 192 at 2, 7.
[32] ECF Nos. 189 at 9; 192, at 10.
[33] ECF Nos. 189 at 17–20; 192 at 18–20.
[34] ECF No. 192, at 3.

## II. APPLICABLE LAW

### A. The Scope of Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery—whether the documents are good, bad, or indifferent.[35] The disclosure duty is a central concept of the discovery process and finds expression not only in the rules of discovery, but also in the Rules of Professional Conduct, which prohibit an attorney from suppressing any evidence subject to a legal obligation to reveal or produce.[36] Federal Rules of Civil Procedure 26(a) and (e) also require a litigant to supplement disclosures and discovery responses once the litigant learns that the disclosures or discovery responses are incomplete. *See* Fed. R. Civ. P. 26.

Information need not be admissible into evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Rather, the information merely needs to be proportional and relevant to any claim or defense. *Id.* The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[37] This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well

---

[35] *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 384 (E.D. La. 2011), *objections overruled*, 284 F.R.D. 374 (E.D. La. 2012) (citation omitted).
[36] *Id.*
[37] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).

in advance of trial.[38]  At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[39]  Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[40]  If relevance is in doubt, the court should be permissive in allowing discovery.[41]  Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[42]

A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests and is subject to Rule 26(g)(1)(B)'s requirement to certify that the discovery request is "(i) consistent with these rules . . . ; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B).  If discovery requests fall outside the Rule 26(b)(1) scope of discovery, the serving party may face Rule 26(g)(3) sanctions if it made the certification without substantial justification.[43]  "Substantially justified" means justified to a degree that could satisfy a reasonable person[44] and requires a reasonable basis in both law and fact, such that there is a genuine dispute or reasonable people could differ as to the appropriateness of the contested action.[45]

---

[38] *Id.* at 590 n.5 (citation omitted).
[39] *Id*. at 590 (citations omitted).
[40] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc*., 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[41] *E.E.O.C. v. Simply Storage Mgmt.*, *L.L.C*., 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).
[42] *Rangel*, 274 F.R.D. at 590 n.5.
[43] *Samsung Elecs. Am. Inc. v. Yang Kun Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (citing Fed. R. Civ. P. 26(g)(1)(B), 26(g)(3); *Heller v. City of Dallas*, 303 F.R.D. 466, 475–77 (N.D. Tex. 2014) ("Rule 26(g) is thus designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.")).
[44] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[45] *Id.*; *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008); *Black Ass'n of New Orleans Fire Fighters (Banoff) v. City of New Orleans*, No. 86-1512, 1990 WL 163565, at *3 (E.D. La. Oct. 23, 1990).

The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. Thus, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[46] "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment.

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[47] discovery does have "'ultimate and necessary boundaries.'"[48] The parties and the court have a collective responsibility to ensure that discovery is proportional, and Rule 26(b)(2)(C) *mandates* that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope

---

[46] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).
[47] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).
[48] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

8

permitted by Rule 26(b)(1)."[49]  Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[50]  While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[51]

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  A protective order may forbid discovery or specify terms for discovery.  *Id.* 26(c)(1)(A), (B).  Rule 26's requirement of "good cause" to support a protective order places the burden upon the movant to show the necessity of its issuance, which contemplates a "'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"[52]

### B. Duties in Responding to Discovery

#### 1. Full and Complete Responses

"Discovery by interrogatory requires candor in responding. . . .  The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive."[53]  The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper.[54]  Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully

---

[49] Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).
[50] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation omitted).
[51] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. Mar. 4, 2020).
[52] *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).
[53] *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir.1977).
[54] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).

[that question],' a party's obligation under Rule 33 is satisfied."[55]  A party is not required to make an extensive investigation in responding to an interrogatory, but must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[56]

### 2. Objections Must be Stated with Specificity

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[57] The party objecting must state how the objection "relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[58] Any objection must clearly state how the information sought is not relevant to any claim or defense, or how the request is overbroad, burdensome or oppressive.[59]

When a party objects to a request for production, the "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a

---

[55] *Id.* (citing *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. A–11–cv–542–LY, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010))).
[56] *Id.* (citing 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013)).
[57] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).
[58] *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (quotations omitted).
[59] *Chevron Midstream Pipelines v. Settoon Towing, LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051 at *3 (E.D. La. Jan. 20, 2015) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.") (citation omitted).

request must specify the part and permit inspection of the rest."[60]  Objections interposed without also indicating whether any document or information is being withheld are improper.[61]  Responses must also clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing same.[62]

Courts throughout the country have long interpreted the federal rules to prohibit general, boilerplate objections.[63]  Boilerplate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request.[64]  General objections refer to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in a given set of discovery requests.[65]  A general objection untethered to specific requests (and is thus also a boilerplate objection) is improper.[66]  Merely copying and pasting an objection by itself, however, does not render an objection a boilerplate objection.[67]  Likewise, in some instances, general objections may serve as an efficient response whereby the court may consider

---

[60] Fed. R. Civ. P. 34(b)(2)(C); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

[61] *See Chevron*, 2015 WL 269051 at *4 (holding that objections fall woefully short of objecting party's burden when party objected to documents and information protected by privilege but did not describe whether any documents were withheld or the nature of withheld documents).

[62] *Id*. (citation omitted) ("Objections that fail to provide an appropriate basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects.").

[63] *See, e.g.*, *id.* at *3 (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.") (citation omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection.").

[64] *See Tim Long Plumbing, Inc. v. Kinsale Ins. Co*., No. 4:20-CV-42, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (providing examples for boiler plate language, such as "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case.").  Objections are deemed "boilerplate" when they are identical and not tailored to the specific discovery request.  *Amazing Ins., Inc. v. DiManno*, No. 2:19-cv-1349, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) (citation omitted).

[65] *Grider v. Keystone Health Plan Cent., Inc*., 580 F.3d 119, 134 n.16 (3d Cir. 2009).

[66] *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (citation omitted) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objections on those grounds." (internal quotations omitted)).

[67] *Tim Long Plumbing*, 2020 WL 6559869, at *4.

and rule upon general objections raised against sets of interrogatories or requests for production.[68] To serve this purpose and to comply with the Federal Rules of Civil Procedure, however, the general objections must raise specific objections and correspond to specific discovery requests.[69] Where a general objection is connected both to the facts of the case and specific discovery requests, they are proper; when they are disconnected from either the facts or the discovery requests, they are not proper.[70]

### C. Motion to Compel

In addressing a motion to compel, the moving party bears the burden to establish that the materials requested are within the scope of permissible discovery, after which the burden shifts to the party resisting discovery to show why the discovery is irrelevant, why discovery should not be permitted, and/or to substantiate its objections.[71] If a party resists discovery on the grounds of proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties'

---

[68] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996) (citations omitted).

[69] *Dickey v. Apache Indus. Servs., Inc.*, No. 18-572, 2019 WL 4261117, at *3 (M.D. La. Sept. 9, 2019) (collecting cases); *see Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) ("Defendants initially gave general objections applicable to all of Plaintiff's discovery requests. But critically, after providing their general objections, Defendants addressed each and every discovery request individually, making specific objections before providing detailed and informative responses, notwithstanding those objections.").

[70] Likewise, the practice of responding to discovery requests "subject to" and/or "without waiving" objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure. *Heller v. City of Dallas*, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014) (citations omitted). Such an objection paired with a response "preserves nothing and serves only to waste the time and resources of both the Parties and the Court." *Id.* at 487. To the extent any response or production is done "subject to" or "without waiving" objections other than privilege or work product, such objections are waived. *Id.*

[71] *Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections.") (citation omitted); *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) ("'[T]he moving party bears the burden of showing that the materials and information sought are relevant to the action . . . .'") (citation omitted); *Davis v. Young*, No. 11-2309, 2012 WL 530917, at *3 (E.D. La. Feb. 16, 2012) (same) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

12

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[72]

## III. ANALYSIS

Plaintiff's Motions to Compel are virtually identical and do not clearly indicate which discovery requests are at issue. As such, they fail to comply with Local Rule 37, which requires Plaintiff to "quote verbatim each interrogatory, request for production and request for admission to which the motion is addressed, followed immediately by the verbatim response or objection." Federal Rules of Civil Procedure Rule 37(a)(1) provides that any motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." At least two defendants take issue with Plaintiff's Rule 37 certification. ECF No. 189; at 5–6; 192, at 5–6; 195, at 5. Plaintiff's failure to comply with Local Rule 37 by clearly indicating the discovery requests at issue and/or failure to engage in a fulsome meet and confer constitute sufficient reasons in themselves to deny several of the motions to compel.[73]

More importantly, however, Plaintiff has failed to carry his initial burden to establish that the information sought is relevant to his claim and proportional to this case. While well logs may provide information as to materials used by Defendants, Plaintiff fails to explain how any information from the well logs will shed any light on whether or not Plaintiff performed any services at that particular location during the use of such materials. As Magistrate Judge Reidlinger

---

[72] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).
[73] *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. 12-257, 2014 WL 4373197, at *3 (M.D. La. Sept. 3, 2014); *see also Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, No. 11-633 (M.D. La. July 2, 2014) (denying motion to compel where defense counsel made a single attempt by email to meet and confer and did not do so in a good faith effort to resolve the dispute without court intervention).

held in *Leonard v. Board. of Supervisors of Louisiana State University Agiculturereal & Mechanical College*,[74] "without some factual basis to conclude that [plaintiff] was actually exposed to an asbestos-containing component [on its premises], the plaintiffs' discovery requests are nothing more than a classic fishing expedition."  Absent such evidence, Plaintiff's argument that the information sought is relevant to his claims is factually unsupported and wholly unpersuasive.  *See id.*  As Plaintiff has failed to provide any factual basis or information regarding alleged exposure to asbestos on Defendants' premises, his request that Defendants produce seven years' worth of well logs from forty years ago covering over half a million square miles in the Gulf of Mexico is improper and not proportional to the needs of the case.

Even if Plaintiff had established the relevance of the well logs for all of Defendants' wells in the Gulf of Mexico from 1980-87, Plaintiff's argument that Defendants improperly interposed "boilerplate, general objections" is misplaced.  Certainly the use of "Preliminary Statements" and "General Objections" are not in and of themselves consistent with the discovery rules.  However, while some portions of Defendants' objections would be considered boilerplate or general if they stood alone, those portions of the responses must be read in the context of the remaining, more detailed explanations for objection based on relevance and burden.[75]  For instance, Plaintiff objects based on boilerplate and general objection to Defendants detailed statements:

> In addition to the General Objections asserted above, Defendant objects to this request as overly broad, unduly burdensome, vague, ambiguous and nonspecific as to the name of the drilling rigs, well sites and to specific areas in the Gulf of Mexico or events relevant to this lawsuit. Due to Hsieh being unable to identify the drilling rig name and well name relating to Gulf Oil, Defendant further objects to this request as premature. Defendant further objects to this request on the grounds that it is not proportional to the needs of this case. Federal Rule of Civil Procedure 26(b)(1) provides:

---

[74] No. 13-565-JJB, 2014 WL 4675077, at *1 (M.D. La. Sept. 17, 2014),
[75] *Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 7049848, at *7–8 (N.D. Miss. Dec. 1, 2020) (rejecting boilerplate argument when response included further, more detailed information expounding on the cited objections).

14

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs it likely benefit.

To prevail in an asbestos case under Louisiana law (this is an OCSLA case, which will apply state law as a surrogate federal law for exposures on platforms on the OCS), a plaintiff "must prove by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant; and, (2) that this exposure caused or was a substantial factor in brining about his mesothelioma." Romano v. Metro Life Ins. Co., 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So.3d 176, 182; see also Palermo v. Port of New Orleans, 2004-1804 (La. App. 4 Cir. 3/15/06), 933 So. 2d 168, 181. In order to meet his burden of proving causation in this case against Defendant, Hsieh must prove that he was exposed to asbestos attributable to his work with Defendant and that this exposure was a substantial factor in the development of his disease. Lopez v. McDermott, Inc., CV 17-8977, 2020 WL 3668059, at *3 (E.D. La. July 6, 2020). Given that Hsieh has failed to identify any asbestos-containing products including drilling mud and/or additive that he worked with while employed by Schlumberger and that Hsieh failed to positively identify any drilling rigs operated by Gulf Oil on which Hsieh worked, this request is not likely to lead to the discovery of relevant and admissible evidence. This request is vague and merely a fishing expedition since Hsieh has produced no evidence concerning exposure on specific drilling rigs or wells in which Gulf Oil was the operator. Even if Defendant were to undertake the overly burdensome tasks of searching for, locating, identifying, and producing the scores of irrelevant information requested by Hsieh, Hsieh's failure to connect Defendant, in any meaningful way, to his alleged disease would prevent Hsieh from meeting his burden of proof.

Put simply, Hsieh does not merely seek information from Defendant to fill in the gaps of his case, Hsieh is requesting that Defendant produce nearly unlimited categories of information in a last-ditch effort to create a case for Hsieh to prosecute. This request is clearly not proportional to the needs of this case. Defendant also objects to this request as overly broad, vague, ambiguous, unreasonable, and unduly burdensome in light of the limited information provided by Hsieh. Hsieh has provided insufficient information regarding the rigs, vessels or other structures alleged operated by Gulf Oil at which Hsieh allegedly worked. Further, Hsieh has not provided sufficient information regarding the locations of Hsieh's wells sites. This request seeks categories of information limited in geographical scope only to "the Gulf of Mexico and the coastal waters of the Gulf Coast states." First, Defendant objects to the use of the phrase "coastal waters for the Gulf Coast states" as overbroad, vague, ambiguous, and undefined by the request. Further, the "Gulf of Mexico" as used by Hsieh in this request is overly

15

burdensome as it refers generally to an area of more than 600,000 square miles. Hsieh not only has failed to provide identifying information of offshore drilling rigs to all Defendant to conduct a reasonable search for information responsive to this request, but, Hsieh's request, as currently constituted, would require Defendant to search potentially relevant information spanning nearly a decade and pertaining to an area of more than half a million square miles. Without more details regarding Hsieh's work on Gulf Oil operated drilling rigs, Defendant is faced with the nearly impossible task of determining, with any degree of certainty, any of the information requested by Hsieh. If Hsieh is able to provide additional information regarding Hsieh's work history regarding Gulf Oil drilling rigs or well names, Defendant may be able to provide information responsive to this request. As currently constructed Hsieh seeks information that would provide no assistance in Hsieh's effort to meet his burden of proof in this case.

Subject to and without waiving the foregoing objections, Defendant states that if Hsieh provides the necessary specific information regarding Hsieh's work history as it relates to Gulf Oil, Defendant will be in a better position to supplement its response.[76]

In short, Defendants' detailed objections such as that quoted above is neither general nor boilerplate. Rather, it directly relates its objections to the facts of this case and the reasons the discovery request is improper and/or disproportional.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motions to Compel (ECF Nos. 170, 171, 172 & 174) are DENIED.

New Orleans, Louisiana, this 9th day of August, 2021.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[76] ECF No. 171, at 42 – 43.